UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ROSALYN A. CAPALDI<br>Defendant | CIVIL ACTION NO.: 1:06-cv-493 |

**STATEMENT OF CLAIM BY PLAINTIFF THE HANOVER INSURANCE GROUP**

Plaintiff, the Hanover Insurance Group ("Hanover"), pursuant to the December 13, 2006 Notice of the conference scheduled pursuant to Fed. R. Civ. 26(f), Hanover hereby submits its Statement of Claim. This conference has been rescheduled and is set for January 18 at 2:30 p.m. in front of U.S.D.C. Judge William E. Smith.

**Relevant Facts**

The Hanover Insurance Company, as wholly owned subsidiary of The Hanover Insurance Group, is in the business, among other things, of writing surety bonds for construction contractors. Hanover is licensed to do business in the State of Rhode Island.

V.F. Capaldi Construction Corporation ("V.F. Capaldi"), during all relevant times, was a Rhode Island-based underground contractor constructing, among other things, projects for public entities in Rhode Island.

Hanover wrote a performance and a payment bond on behalf of V.F. Capaldi, in favor of the City of East Providence, Rhode Island ("Owner"), on a project known as Wampanoag Trail Water Transmission Main ("Project"). The bonds were dated November 7, 2001 and were each

in the amount of $1,497,777. True and accurate copies of the payment and performance bonds are attached to this Statement as Exhibit A.

The performance bond, in general terms, required V.F. Capaldi, as principal, and Hanover, as surety, to perform all contractual obligations that V.F. Capaldi undertook to complete the Project on behalf of the Owner. The payment bond, in general terms, required V.F. Capaldi, as principal, and Hanover, as surety, to make payment to subcontractors and suppliers supplying labor and material to the Project.

As partial consideration for Hanover writing bonds on behalf of V.F. Capaldi, Vincent F. Capaldi and Rosalyn Capaldi ("Capaldi"), all as individual indemnitors, executed an Agreement of Indemnity ("Agreement") dated June 19, 2001. A true and accurate copy of the Agreement is attached to this Statement as Exhibit B.

Under the terms of the Indemnity Agreement, the indemnitors jointly and severally agreed to, among other things, the following:

"2. The Indemnitors shall exonerate, indemnify and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:

(a.) by having executed or procured execution of the bond; or
(b.) in making an independent investigation of any claim, demand or suit; or
(c.) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability of whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or
(d.) in enforcing any of the covenants, terms and conditions of this Agreement.

3. Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. …

The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not

limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor."

In early May 2002, Capaldi placed V.F. Capaldi in receivership, in the State Court in Rhode Island. On or about May 30, 2002, the Owner defaulted V.F. Capaldi on the Project and made a demand against Hanover under the performance bond referenced above. The Owner demanded that Hanover complete all work left to be completed under the contract and pay all labor and material bills left due and owing on the Project.

By letter dated May 23, 2002, a true and accurate copy of which is attached to this Statement of Claim as Exhibit C, Hanover wrote to Capaldi and advised her of her duty to hold Hanover harmless from all loss, costs, attorney fees and expense, pursuant to the terms of the Agreement. Specifically, Hanover demanded that she place $500,000 in collateral with Hanover pursuant to the Paragraph 3 of the Agreement. Hanover also requested a copy of Capaldi's most recent financial statement. Capaldi failed or refused to post the collateral requested and to forward an up-to-date financial statement.

Hanover proceeded to discharge its obligations under the performance and payment bonds by completing the work of V.F. Capaldi on the Project and paying the valid claims of labor and material suppliers. In discharging its responsibilities under these bonds, Hanover made loss payments totaling $312,514.27. In addition, Hanover paid the fees of attorneys and engineering consultants that assisted Hanover in resolving the claims, totaling $48,008.50.

Hanover did reduce its losses through recovery of contract funds from the Owner and from a one-time payment on Hanover's claim in the V.F. Capaldi Receivership Action. The total in contract funds recovered by Hanover is $190,993.52 and recovery from the receivership estate

was $75,000, for total of $265,993.52. After this amount is subtracted from the loss payments of $312,514,27, Hanover still has a loss of $46,520.75.

Accordingly, the principal amount of Hanover's claim is the remaining loss of $46,520.75, the expense payments of $48,008.50 and approximately $7500 thus far in attorney fees in pursuing this indemnity action. The total loss and expense is therefore presently $102,029.25. Hanover, pursuant to the terms of the Agreement and relevant statute, is also seeking interest from May 2002 to the present date at a rate of 12%, or approximately $50,000.

Hanover made a demand against Rosalyn Capaldi for reimbursement of its loss and fees by letter dated August 28, 2006. A true and accurate copy of which is attached to this Statement of Claim as Exhibit D. Capaldi has refused to make payment to Hanover and, as a consequence, Hanover has filed this action.

**Relevant Authorities**

Principally, Hanover's claim is based on the provisions of Paragraphs 2 and 3 of the Agreement, cited above. Capaldi, as an individual indemnitor, agreed to indemnify and hold harmless Hanover, as surety, from all its loss, interest, court costs, and consultant and attorney fees incurred as a result of Hanover having written bonds on behalf of V.F. Capaldi. As soon as claims are made against the surety, the indemnitors are obliged to post collateral with the surety in amounts satisfactory to it to indemnify and hold it harmless from potential loss. As stated above, Hanover wrote to Capaldi on May 23, 2002 and demanded $500,000 in collateral. Capaldi never responded. According to its terms, Capaldi was from that point forward in default of the Agreement.

In addition, the surety has broad discretion, under Paragraphs 2 and 3 of the Agreement, to resolve claims and incur attorney and consultant fees in resolving the claims. In fact, the decisions made by the surety are binding on the indemnitors. As set forth in Paragraph 3 of the

Agreement, “the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety’s payments at the maximum rate allowable) under the Surety’s belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed.” In fact, “vouchers or other evidence of payment by the Surety shall be conclusive of the fact and amount of such liability, necessity or expediency, and of the Indemnitor’s liability to the Surety therefor.”

Rhode Island Courts, in construing this same language from other indemnity agreements, have enforced it broadly in favor of the surety. In the case of *Massachusetts Bonding and Insurance Company v. Gauteri*, 30 A. 2d. 848 (RI 1943), the Rhode Island Supreme Court granted the surety’s directed verdict motion under the indemnity agreement, holding that the only defense an indemnitor can raise to the indemnity claim of the surety is that the surety committed fraud or collusion in paying the claim. The indemnitors, in defending the claim, had argued that there should be applied the common law standard that parties to a contract must act in good faith. The Supreme Court specifically rejected this view, holding that, in light of the clear and “sweeping” language of the agreement (the Court specifically referred to the exact language cited above, that was also in that agreement, concerning “necessity or expediency”), the fraud or collusion standard applied. Having found no fraud or collusion in the surety’s payments of the claim, the Court directed a verdict in the surety’s favor against the indemnitors.

The *Massachusetts Bonding* case was recently specifically followed by a First Circuit decision, *Fireman’s Insurance Co. of Newark v. Todesca Equipment Co., Inc.*, 310 F. 3d 32 (1st Cir. 2002). In this case, on appeal from the Rhode Island District Court, the First Circuit analyzed the *Massachusetts Bonding* decision and decided that it was still good law. In

affirming the lower Court's entry of summary judgment in favor of the surety, the Court held that under the broad language of the indemnity agreement (containing exactly the same language as the Hanover Agreement quoted above), the indemnitors were "required to allege and prove fraud or collusion in order to avoid repayment of the claim paid by (the surety)." *Id. at 37.*[1] Again, the Court rejected the indemnitors' contention, as did the Court in the *Massachusetts Bonding* case, that the contract should be construed with the implicit covenant of good faith and fair dealing. The Court held: "(the indemnitors) must live by the terms of their agreement, which entitle (the surety) to repayment for all claims paid by it in the absence of fraud or collusion." *Id. at 37.* Under this standard, the Court enforced the Indemnity Agreement and ruled in favor of the surety on its total claim.

In her Answer to the Complaint filed by Hanover, Capaldi sets forth no defense based in fraud or collusion by Hanover in its payment of claims and incurring of attorney fees and consultant fees in this matter. Among other things, Capaldi alleges that Hanover failed to mitigate its damages. As can be seen from the above case law, this is not a basis for avoiding Capaldi's obligation under the Agreement.

**Conclusion**

Hanover has filed suit on the liquidated claim it has against Capaldi under the Agreement, which at present totals $102,029.25. Hanover is prepared to file a summary judgment motion on its claim. Under the terms of the Agreement and in view of the case law cited above, Hanover is entitled to the full amount of its loss, expense and interest in this matter.

---

[1] The Court in *Fireman's* found in favor of the surety despite the fact that the surety, concerning the largest portion of its indemnity claim, had not responded to the underlying claim on its bond from a subcontractor, did not respond to the subcontractor's filing of a subsequent lawsuit, and did not respond to the summary judgment motion that the subcontractor filed. When it was ultimately presented with the judgment, which was approximately four times what had been prayed for in the complaint, the surety paid it and filed suit against the indemnitors for reimbursement. The Court found in favor of the surety for the total claim. *Id.* at 34 and 37, 38.

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorney,

*/s/ Kevin C. Cain*

Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
[617] 951.2100

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2007, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.

*/s/ Kevin C. Cain*______

Kevin C. Cain, #3960

PABOS2:RRITLAN:653028_1
2114-91425