UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP,<br>Plaintiff,<br>v.<br><br>ROSALYN A. CAPALDI,<br>Defendant. | CIVIL ACTION<br>NO. 06-493-S-LDA |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The plaintiff The Hanover Insurance Group ("Hanover") submits this memorandum of law in support of its motion for summary judgment against the defendant Rosalyn A. Capaldi ("Capaldi"). Hanover is entitled to summary judgment on the grounds that Capaldi executed an Agreement Of Indemnity (the "Indemnity Agreement") pursuant to which she agreed to indemnify and hold Hanover harmless from any losses on account of the performance and payment bonds issued by Hanover on behalf of V.F. Capaldi Construction Corporation ("V.F. Capaldi"). As a result of performance and payment bonds issued by Hanover in connection with a construction contract between V.F. Capaldi and the City of East Providence, Rhode Island ("East Providence"), Hanover has incurred a loss of $94,529.95. Hanover is entitled to summary judgment on its claim against Capaldi for indemnification in that amount, plus interest from when the loss was incurred in 2002, and attorney fees incurred in bringing this lawsuit, all as set forth in the Indemnity Agreement.

## I. STATEMENT OF UNDISPUTED FACTS

Hanover is in the business of providing surety bonds on behalf of contractors and other companies. (Affidavit Of Joseph P. Quinn In Support Of Plaintiff's Motion For Summary Judgment (the "Quinn Affidavit"), ¶ 2). Hanover provided surety bonds on behalf of V.F. Capaldi, as principal, to various owners and general contractors, and which bonds secured the obligations of V.F. Capaldi to perform construction required by underlying contracts or subcontracts with those entities and to pay for labor and material required for the completion of the contracts. (Quinn Affidavit, ¶ 2).

In partial consideration of the issuance of the surety bonds by Hanover on behalf of V.F. Capaldi, V.F. Capaldi and Capaldi executed the Indemnity Agreement in favor of Hanover. (Quinn Affidavit, ¶ 3 and Exhibit A). Pursuant to the Indemnity Agreement, particularly paragraph 2 of the Indemnity Agreement, Capaldi agreed to, among other things:

> exonerate, indemnify and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:
>
> (a) by having executed or procured the execution of the bonds; or
>
> (b) in making an independent investigation of any claim, demand, or suit; or
>
> (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or
>
> (d) in enforcing any of the covenants, terms and conditions of this Agreement.

(Quinn Affidavit, ¶ 4 and Exhibit A).

On or about November 9, 2001, Hanover issued a performance bond and a payment bond, each in the amount of $1,497,777.00, on behalf of V.F. Capaldi, as principal, to East Providence, as obligee, relating to a construction project known as the Wampanoag Trail Water Transmission Main (the "East Providence Project"). (Quinn Affidavit, ¶ 5 and Exhibit B).

In May, 2002, during the course of the East Providence Project, V.F. Capaldi filed a petition for receivership in the Rhode Island Superior Court and it stopped working on the East Providence Project. (Quinn Affidavit, ¶ 6). On May 30, 2002, East Providence made a demand on Hanover under the performance bond for Hanover to complete the East Providence Project. (Quinn Affidavit, ¶ 6). In addition, various labor and material suppliers of V.F. Capaldi made claims against the Hanover payment bond for monies owed to them by V.F. Capaldi on the East Providence Project. (Quinn Affidavit, ¶ 6).

Hanover discharged its obligation under the performance bond by arranging for Parkside Utility Construction Corporation ("Parkside") to complete the East Providence Project. (Quinn Affidavit, ¶ 7). Parkside's completion price was $448,484.95, against which was offset V.F. Capaldi's unbilled contract balance of $353,680.00 on its contract with East Providence, leaving a deficit of $94,804.95 which Hanover paid to East Providence. (Quinn Affidavit, ¶ 7 and Exhibit C).

With respect to the payment bond claims, Hanover investigated those claims and made the following payments: $1,650.00 to Kraviec Tree Clearing, Inc.; $39,444.99 to Warwick Win Waterworks; and $176,614.33 to U.S. Pipe & Foundry Company, Inc. (Quinn Affidavit, ¶ 8 and Exhibit D).

Hanover incurred attorney and consultant fees totaling $48,008.50 in connection with the performance and payment bond claims. (Quinn Affidavit, ¶ 9 and Exhibit E). Hanover engaged

the attorneys and consultants in connection with the rebidding for the completion of the East Providence Project, the investigation and resolution of the claims filed against the payment bond, and the issues surrounding V.F. Capaldi's receivership and the competing claims which were made therein by other creditors of V.F. Capaldi with respect to who was entitled to V.F. Capaldi's contract balance on the East Providence Project. (Quinn Affidavit, ¶ 9).

Ultimately, Hanover recovered $190,993.52 in contract funds from East Providence on billings made by V.F. Capaldi prior to its filing for receivership, and it received a distribution of $75,000.00 from the V.F. Capaldi receivership, for a total recovery of $265,993.52. (Quinn Affidavit, ¶ 10). After this recovery amount was subtracted from the total loss payments of $312,514.27 ($94,804.95 on the performance bond, and $217,709.32 on the payment bond), the net loss to Hanover on the V.F. Capaldi performance and payment bonds was $46,520.75, plus attorney and consultant fees of $48,008.50, for a total loss of $94,529.25. (Quinn Affidavit, ¶ 10). The Indemnity Agreement provides in paragraph 3 that Hanover is entitled to interest on its loss amount from the date when the loss was incurred, which was in the fall of 2002. (Quinn Affidavit, ¶ 10 and Exhibit A).

Pursuant to paragraph 3 of the Indemnity Agreement, Capaldi was obligated to post collateral with Hanover to secure Hanover from any loss or expense that it may incur on the performance and payment bonds which it issued for V.F. Capaldi. (Quinn Affidavit, ¶ 11 and Exhibit A). By letter dated May 23, 2002, Hanover made demand upon Capaldi to post collateral in the amount of $500,000.00, which reflected the amount of the claims pending against the payment and performance bonds at that time. (Quinn Affidavit, ¶ 11). Capaldi failed to post any collateral. (Quinn Affidavit, ¶ 11).

The Indemnity Agreement provides that Hanover is entitled to recover its attorney fees incurred in enforcing the Indemnity Agreement against Capaldi. (Quinn Affidavit, ¶ 12 and Exhibit A). Hanover will submit to the court at the hearing on the motion for summary judgment an affidavit detailing the attorney fees incurred by Hanover as of that date in bringing this lawsuit against Capaldi. (Quinn Affidavit, ¶ 12).

## II. ARGUMENT

### A. Summary Judgment Standard

Fed. R. Civ. P. 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and responses to requests for admissions under Rule 36, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If no genuine issue of material fact exists, the motion justice should then determine if the moving party is entitled to judgment as a matter of law." Mitchell v. Mitchell, 756 A.2d 179, 181 (R.I. 2000). In order to avoid summary judgment, the non-moving party cannot rest upon mere allegations, denial in pleadings, conclusory statements, or legal opinions. See Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999).

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (citation omitted). The question is whether there is sufficient evidence to require submission of the case to a jury or "whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). Summary judgment "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases,

thereby freeing courts to utilize scarce judicial resources in more benefical ways." Mesnick v. General Electric Company, 950 F.2d 816, 822 (1st Cir. 1991).

B. Hanover Is Entitled To Summary Judgment On Its Complaint Against Capaldi

The Indemnity Agreement provides that Capaldi is obligated to indemnify and hold harmless Hanover from any loss on account of the performance and payment bonds which Hanover issued on behalf of V.F. Capaldi. Specifically, the Indemnity Agreement states in relevant part:

> 2. The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:
> (a) by having executed or procured the execution of the bonds; or (b) in making an independent investigation of any claim, demand, or suit; or (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors the defend to Surety; or (d) in enforcing any of the covenants, terms and conditions of this Agreement.
>
> 3. Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made payment therefor.
>
> . . . .
>
> The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment

> or disbursement by the Surety, the Indemnitors agree to immediate reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor.

(Quinn Affidavit, Exhibit A).

In this case, Hanover, within its option and sole discretion, undertook the completion of the East Providence Project upon the demand made by the performance bond obligee (East Providence), and settled the claims made against the payment bond by unpaid laborers and suppliers to V.F. Capaldi on the East Providence Project, and thus Hanover is entitled to be indemnified and held harmless from that loss by Capaldi.

It is well-established under Rhode Island law that a surety is entitled to summary judgment on the indemnity agreement except when the indemnitor can show by specific, admissible facts that the surety committed fraud or collusion in incurring the loss on the bonds. In Massachusetts Bonding & Insurance Company v. Gauteri, 30 A.2d 848, 852 (R.I. 1943), the Supreme Court of Rhode Island upheld the trial court's ruling to grant the plaintiff surety's motion for a directed verdict on the indemnity agreement, holding that the only defense an indemnitor can raise to the surety's indemnity claim is that the surety committed fraud or collusion in incurring its loss. The indemnitors, in defending against the surety's claim for indemnity, had argued that there should be applied the common law standard that parties to a contract must act in good faith. 30 A.2d at 851. The Supreme Court of Rhode Island rejected that argument, holding that, in light of the clear and "sweeping" language of the indemnity

agreement in that case (in fact, the court specifically referenced the language in the indemnity agreement in that case concerning "necessity or expediency", which exact language is also the Hanover Indemnity Agreement), the fraud or collusion standard applied. 30 A.2d at 850. Having found no fraud or collusion in the surety's incurrence of its loss in Massachusetts Bonding, the directed verdict entered in the surety's favor against the indemnitors was upheld on appeal.

The Massachusetts Bonding case was followed recently by the United States Court of Appeals for the First Circuit in Fireman's Insurance Co. of Newark, New Jersey v. Todesca Equipment Co., Inc., 310 F.3d 22 (1st Cir. 2002). In Fireman's Insurance, on appeal from the United States District Court for the District of Rhode Island, the First Circuit analyzed the Massachusetts Bonding case and decided that it remained good law. 310 F.2d at 36 fn. 6. In affirming the district court's entry of summary judgment in favor of the surety, the First Circuit held that under the broad language of the indemnity agreement (containing exactly the same language as the Hanover Indemnity Agreement in this case), the indemnitors were "required to allege and prove fraud or collusion in order to avoid repayment of the claim paid by [the surety]." 310 F.3d at 37[1]. Again, the First Circuit rejected the indemnitors' contention, as did the Supreme Court of Rhode Island in Massachusetts Bonding case, that the indemnity agreement should be construed with the implicit covenant of good faith and fair dealing. The

[1] The First Circuit in Fireman's Insurance found in favor of the surety despite the fact that the surety, concerning the largest portion of its indemnity claim, had not responded to the underlying claim on its bond from a subcontractor, did not respond to the subcontractor's filing of a subsequent lawsuit, and did not respond to the summary judgment motion that the subcontractor filed. When it was ultimately presented with the judgment, which was approximately four times what had been prayed for in the complaint, the surety paid it and filed suit against the indemnitors for reimbursement. The district court found in favor of the surety for the total claim, and the First Circuit affirmed on appeal. 310 F.3d at 34 and 37-38.

First Circuit held: "[the indemnitors] must live by the terms of their agreement, which entitle [the surety] to repayment for all claims paid by it in the absence of fraud or collusion." Id. at 37. Under this standard, the First Circuit enforced the indemnity agreement and ruled in favor of the surety on its total claim.

In the Answer which Capaldi filed to Hanover's Complaint, Capaldi set forth no defense based on fraud or collusion by Hanover in its payment of claims and incurring of attorney and consultant fees as a result of V.F. Capaldi's default on the East Providence Project. Capaldi has alleged that Hanover failed to mitigate its damages, but that is not a defense. Capaldi might not like what Hanover did, or Capaldi think that Hanover could or should have taken other action on the claims which were made against the performance and payment bonds on the East Providence Project, but that is simply not a defense.

Finally, the evidentiary standard under the Indemnity Agreement clearly favors summary judgment. The Indemnity Agreement provides: "Vouchers or other evidence of payment by the surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor." (Quinn Affidavit, Exhibit A at ¶ 3). Hanover has presented such conclusive evidence with the vouchers of payment included with the Quinn Affidavit. Faced with such conclusive evidence, Capaldi has the burden of proving fraud or collusion. See Fireman's Insurance, 310 F.3d at 34-37. Capaldi has not met, and cannot ever meet this burden, and so Hanover is entitled to summary judgment on its claim for indemnity against her.

## III. CONCLUSION

For all the reasons set forth above, Hanover respectfully requests that this Court allow Hanover's motion for summary judgment on its Complaint against Capaldi.

PLAINTIFF THE HANOVER INSURANCE GROUP
By its attorneys,

/s/ Kevin C. Cain

Kevin C. Cain, #3960
John P. Connelly, pro hac vice
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
(617) 951-2100

Dated: March 5, 2007

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2007, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.

/s/ Kevin C. Cain
Kevin C. Cain, #3960

PABOS2:JCONNEL:656382_1